**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-182-FDW
(5:16-cr-46-FDW-DSC-4)**

| | |
|---|---|
| REGINALD JERRY SHAW, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I. BACKGROUND

Petitioner Reginald Jerry Shaw participated in a conspiracy to traffic methamphetamine from 2015 to August 2016. (Crim. Case No. 5:16-cr-46-FDW-DSC-4, Doc. No. 19: Superseding Indictment). Three cooperating defendants identified Petitioner as their supply source for methamphetamine. (Id., Doc. No. 94 at ¶¶ 6, 8-9: PSR). Law enforcement officers conducted an undercover controlled purchase of methamphetamine from Petitioner in August 2016. (Id. at ¶ 7). After monitoring and recording phone calls between the third cooperating defendant and Petitioner, officers conducted another undercover controlled purchase and then took Petitioner into custody. (Id. at ¶ 10). Petitioner admitted that he had trafficked more than 18 kilograms of methamphetamine from "Junior," Petitioner's own supply source. (Id.). During a consent search of Petitioner's residence, officers found more than 11 kilograms of methamphetamine and a Colt AR-15 rifle. (Id. at ¶ 11). Petitioner identified Junior's residence, where officers spoke to

1

Norberto Macedo, Jr., who identified himself as "Junior," and told officers he was the broker for the methamphetamine seized from Petitioner. (Id. at ¶ 14).

Petitioner was initially charged by criminal complaint, but a grand jury later returned a First Superseding Indictment, charging Petitioner and four co-defendants with "knowingly and intentionally conspir[ing] and agree[ing] with each other and with other persons . . . to distribute and to possess with intent to distribute" 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count One). (Id., Doc. No. 19 at 1: First Superseding Bill of Indictment). The grand jury also charged Petitioner with possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Two). (Id. at 2).

Petitioner entered into a plea agreement with the Government, agreeing to plead guilty to Count One in exchange for the dismissal of Count Two. (Id., Doc. No. 26 at ¶¶ 1-2: Plea Agrmt.)). As part of the plea agreement, Petitioner agreed that he had a prior felony drug conviction pursuant to 21 U.S.C. § 851, and that if he complied with the terms of the plea agreement, the Government would withdraw the Section 851 Information,[1] which would reduce Petitioner's mandatory minimum sentence from 20 years to 10 years. (Id. at ¶ 4). The parties agreed to jointly recommend that more than 15,000 grams, but less than 45,000 grams of methamphetamine was known or reasonably foreseeable to Petitioner. (Id. at ¶ 7). The parties specifically reserved the right to argue whether the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon applied. (Id.). The Government also agreed that Petitioner's guilty plea was timely for purposes of acceptance of responsibility. (Id.).

---

[1] Although Petitioner had prior state felony convictions for trafficking cocaine, it is not clear that this information was ever filed. See (Id., Doc. No. 94 at ¶¶ 41, 48).

Petitioner agreed to waive the right to withdraw his guilty plea once the magistrate judge accepted it. (Id. at ¶ 15). Petitioner also agreed to waive the right to contest his conviction and sentence on direct appeal, or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at ¶¶ 18-19).

At the plea hearing, Petitioner stated that he was pleading guilty to Count One of the Superseding Indictment. (Id., Doc. No. 124 at 7). The magistrate judge advised Petitioner that he was pleading guilty to "methamphetamine trafficking conspiracy," and that the charge alleged that from 2015 to August 2016, Petitioner and his co-defendants "did knowingly and intentionally conspire with each other and others to distribute and to possess with intent to distribute methamphetamine." (Id. at 6, 8-9). Petitioner affirmed that he had been over the charge with his attorney, that he understood it, and that he was guilty. (Id. at 11, 14). The magistrate judge also advised Petitioner that the statutory sentencing range was 20 years to life, but that, based on the plea agreement, the Government intended to withdraw the § 851 Information, which would reduce the mandatory minimum sentence to 120 months, while the statutory maximum of life remained the same. (Id. at 9-11). Petitioner testified that he understood this. (Id. at 11).

The Government reviewed the terms of the plea agreement, including the parties' joint recommendation that the amount of methamphetamine known or reasonably foreseeable to Petitioner was more than 15,000 grams, but less than 45,000 grams; that Petitioner had read, understood, and agreed to the factual basis; and that Petitioner was agreeing to waive the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at 15-18). Petitioner affirmed that he understood and agreed to these provisions. (Id. at 19-20). Petitioner also stated

that he was satisfied with his attorney's services and that his attorney had "been good," "did what he was supposed to do," and "been a friend." (Id. at 21). The magistrate judge accepted Petitioner's guilty plea, finding that he made it knowingly and voluntarily. (Id. at 22-23).

A probation officer prepared a presentence report (PSR), recommending that the Court sentence Petitioner at a total offense level of 35, which included a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. (Id., Doc. No. 94 at ¶¶ 24, 32: PSR). Based on Petitioner's criminal history category of III, the probation officer determined that the advisory guideline range was 210 to 262 months of imprisonment. (Id. at ¶¶ 50, 88). The probation officer noted that, absent the plea agreement, Petitioner could have been held responsible for actual methamphetamine, which would have increased his base offense level. (Id. at ¶ 90).

Petitioner objected to the PSR, arguing that he should not receive the two-level enhancement for possession of a firearm, because the rifle that officers found at his home was unloaded and was found in the attic, not in the vicinity of any drugs, money, or paraphernalia. (Id., Doc. No. 90: Objection to PSR). He also asserted that no witnesses had stated that Petitioner had carried a firearm to any drug deals and that Petitioner's son-in-law, Matthew Daily, claimed that the firearm was his. (Id. at 1). Petitioner's wife also stated that the firearm belonged to Daily and that he kept it in the attic to hide it from her. (Id. at 1-2). Petitioner filed a sentencing memorandum, asserting that if the two-level enhancement applied, the Court should grant a two-level downward variance because the enhancement falls outside the heartland of prohibited conduct. (Id., Doc. No. 108 at 4, 7: Sent. Memo.). The probation officer continued to recommend application of the enhancement because the combination of seized items were indicative of drug trafficking. (Id., Doc. No. 94: Addnm. to Final PSR).

At sentencing, Petitioner reaffirmed his understanding of the nature of the charge and his guilt of the offense. (Id., Doc. No. 123 at 3: Sent. Tr.). He argued that the Government had not met its burden to show that he possessed a firearm, because the rifle was found in the attic, not where the drugs and money were found; Petitioner's wife and son-in-law stated that it was Daily's rifle; and there was no evidence that Petitioner possessed the weapon. (Id. at 5-6). The Government argued that the amount of methamphetamine that officers found at Petitioner's residence was extraordinary and likely the single largest seizure of methamphetamine ever in the district. (Id. at 6-7). The Government also noted that officers found $50,000 in cash at the residence and that the firearm they found was not "just a rifle," or a hunting rifle—it was "an AR-15." (Id. at 7). The prosecutor argued that the AR-15 was a tool of the drug-trafficking trade and that Petitioner had a possessory interest in the residence where the firearm was found. (Id.). This Court overruled the objection, holding that "[i]t is not clearly improbable that the weapon was connected with the offense under these facts" and that the house where officers found the firearm "was a center for a very large drug distribution activity." (Id. at 8). Following a motion, the Court reduced Petitioner's offense level to 32 and sentenced him to 151 months of imprisonment. (Id. at 8, 19-20).

Petitioner appealed. United States v. Shaw, 711 F. App'x 140 (4th Cir. 2018). Defense counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Petitioner did not file a supplemental pro se brief, but the Fourth Circuit directed the parties to file supplemental briefs to address the weapon enhancement. (Id. at 140). The Government moved to dismiss the appeal based on Petitioner's appeal waiver. (Id. at 140-41). The Fourth Circuit granted the motion and dismissed the appeal, holding that Petitioner had knowingly and voluntarily waived the right to appeal his conviction and sentence. (Id. at 141). Petitioner timely filed the present

5

motion to vacate, raising two claims of ineffective assistance: (1) his attorney should have objected to the magistrate judge's alleged failure to ensure that Petitioner understood the elements of conspiracy, and (2) his attorney should have investigated and presented evidence in opposition to the enhancement for possession of a dangerous weapon. (Doc. No. 1 at 4-5). Petitioner seeks to withdraw his "plea agreement" so he can plead anew with an understanding of the elements of conspiracy and to be resentenced without the firearm enhancement. (Id. at 12).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. As discussed above, after examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines, 423 F.2d at 529.

## III. DISCUSSION

### A. Petitioner's Claims of Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant

relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

### 1. Petitioner's Claim of Ineffective Assistance of Counsel Based on Counsel's Alleged Failure to Inform Petitioner of the Elements of Conspiracy

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(G), a court must inform a defendant of the nature of the charge to which he is pleading guilty and determine that he understands it.  A court has broad discretion in determining the best method for informing a defendant of the charge against him but should consider "both the complexity of the charge and

7

the sophistication of the defendant." United States v. DeFusco, 949 F.2d 114, 117 (4th Cir. 1991). A defendant should receive "notice of the true nature of the charge rather than a rote recitation of the elements of the offense," and the notice may be based on information the defendant receives before his plea hearing. Id.

Despite that Petitioner admitted that he understood the charge during his Rule 11 hearing, Petitioner now contends that neither the Court nor the Government informed him of the elements of conspiracy. (Doc. No. 1-1 at 7 (noting that the Government must show an agreement between two or more people to distribute methamphetamine, that Petitioner knew the unlawful purpose of the agreement, and that he willfully joined the agreement). He asserts that his attorney believed that Petitioner was charged with possession with intent to distribute methamphetamine, rather than conspiracy, and, therefore, Petitioner's guilty plea "could not have been knowing and voluntary because he did not possess an understanding of the law in relation to the facts." (Id. at 8).

Petitioner's claim is without merit. This Court adequately advised Petitioner of the nature of the charge against him by stating that he was pleading guilty to a methamphetamine-trafficking conspiracy and by specifically advising him that the charge alleged that from 2015 to August 2016, Petitioner and his co-defendants "did knowingly and intentionally conspire with each other and others to distribute and to possess with intent to distribute methamphetamine." (Crim. Case No. 5:16-cr-46-FDW-DSC-4, Doc. No. 124 at 6, 8-9). Petitioner affirmed that he had reviewed the charge with his attorney, that he understood it, and that he was guilty. (Id. at 11, 14). Additionally, the charge, as set forth by the magistrate judge and in the Superseding Indictment, adequately alleged the elements of the offense, and nothing in the record indicates that Petitioner did not understand the nature of his conspiracy charge. Although he asserts that

8

his counsel mistakenly believed that Petitioner was pleading guilty to a possession offense, counsel's statement regarding "possession with intent to distribute methamphetamine," appears to be an attempt to state the nature of the conspiracy charge and to distinguish that charge from the other count of the Superseding Indictment, which charged a firearm offense under § 924(c). See (Id. at 5-6). In any event, counsel subsequently agreed that "the bottom line is he's pleading guilty to Count One which is methamphetamine trafficking conspiracy." (Id. at 6). Thus, the nature of the offense was clearly stated.

Because the Court adequately advised Petitioner of the nature of the charge to which he was pleading guilty, and he points to no contemporaneous evidence that he did not understand that he was pleading guilty to a conspiracy offense, Petitioner has not shown that counsel was constitutionally deficient for failing to object during the Rule 11 hearing. Cf. United States v. Martinez, 277 F.3d 517, 530 (4th Cir. 2002) (finding no Rule 11 error where the court informed the defendant of the elements of the offense and there was no evidence that the defendant was unaware of the charge or unclear as to the offense conduct). Nor can Petitioner show prejudice, where he was adequately advised of the charge, and the relief he seeks is simply to plead anew to the charge, rather than to proceed to trial. See (Doc. No. 1 at 12). Moreover, it would not have been objectively reasonable for Petitioner to proceed to trial, in light of the evidence against him, as well as the many benefits that he received under the plea agreement, including a lower mandatory minimum sentence, a lower base offense level, a reduction below the otherwise applicable guideline range based on the Government's motion, and the dismissal of the § 924(c) charge.

**2. Petitioner's Claim of Ineffective Assistance of Counsel at Sentencing**

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner asserts that counsel provided deficient performance at sentencing because he did not argue that the firearm was found in the attic and that it was unloaded. (Doc. No. 1-1 at 8). He also contends that counsel should have investigated whether it is legal in North Carolina to hunt with an AR-15 rifle and should have asked the Court to provide explicit reasons for its decision. (Id. at 8-9).

Petitioner's claim is without merit. Under section 2D1.1(b)(1) of the United States Sentencing Guidelines, a two-offense-level increase applies if a defendant involved in a drug-trafficking offense possesses a dangerous weapon, including a firearm. The enhancement reflects the Sentencing Commission's recognition of the increased danger of violence inherent when drug traffickers possess weapons. United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997); U.S.S.G. § 2D1.1, comment. (n.11(A)). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.11(A)). Once the government shows possession, which it may do by showing a "a temporal and spatial relation" between the drug trafficking, the weapon, and the defendant, United States v. Mondragon, 860 F.3d 227, 231 (4th Cir. 2017), the burden shifts to the defendant to show that it is clearly improbable that the firearm was connected to the conspiracy, see id.; Harris, 128 F.3d at 853.

To support application of the enhancement, the government does not need to show that a defendant possessed a firearm during a drug transaction. See United States v. Manigan, 592 F.3d

621, 630 (4th Cir. 2010). It is sufficient if the government "prove[s] by a preponderance of the evidence that 'the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" Id. at 628-29 (quoting United States v. McAllister, 272 F.3d 228, 233-34 (4th Cir. 2001)). In making this determination, a court should consider the type of firearm involved, the proximity of the weapon to drug activities, as well as "the settled connection between firearms and drug activities." Id. at 629. The ready availability of a firearm to protect the participants in drug activity, or the drugs and cash involved with the drug trade, is sufficient to show its connection to the offense conduct. Id.; United States v. Apple, 962 F.2d 335, 338 (4th Cir. 1992) (affirming application of the enhancement where the evidence showed that a firearm was found in plain view at an apartment that was used as a base of operation for the defendants' drug conspiracy); see also United States v. Lambert, 59 F. App'x 576, 578 (4th Cir. 2003) (unpublished) (evidence that conspiracy defendant kept handguns and drugs at his house and statement from co-defendant that defendant always carried a gun was sufficient to support enhancement).

Contrary to Petitioner's assertions, defense counsel objected to the firearm enhancement and argued that it should not apply because the firearm was found in the attic, was unloaded, was claimed by another person, and was not tied specifically to Petitioner. See (Crim. Case No. 5:16-cr-46-FDW-DSC-4, Doc. No. 94; Doc. No. 123 at 5-6). Petitioner also contends that counsel should have investigated whether it was legal in North Carolina to use the AR-15 for hunting. However, the legality of any potential use of the weapon was not at issue,[2] and Petitioner submits

---

[2] Moreover, "[t]he AR-15 is the civilian version of the military's M-16 rifle, and is, unless modified, a semiautomatic weapon." Staples v. United States, 511 U.S. 600, 603 (1994). Also, the Fourth Circuit has recognized that the AR-15 is an assault weapon. See Kolbe v. Hogan, 849 F.3d 114, 121 (4th Cir. 2016), cert. denied, 138 S. Ct. 469 (2017).

11

no evidence that the rifle was kept or used for hunting. Cf. U.S.S.G. § 2D1.1(b)(1), comment. (n.11(A)) (recognizing the enhancement may not apply where the defendant, when arrested at his residence, has an unloaded hunting rifle in his closet).

Rather, the relevant issue was whether the firearm was possessed in connection with drug activity. This Court found that the circumstances of the possession of the weapon, given the extraordinary amount of drugs stored at the house, as well as the large amount of cash at the residence, showed that it was not clearly improbable that the weapon was connected with the offense. Because defense counsel objected to the firearm enhancement, citing the relevant facts, and this Court explained its decision, Petitioner has not shown that counsel's performance was deficient. Nor has Petitioner shown prejudice, because he has not shown that there is a reasonable probability that, but for counsel's allegedly deficient performance, he would have received a lower sentence. Rather, the record shows that his objections were overruled, and this Court determined that the enhancement applied.

**2. CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 28, 2019

Frank D. Whitney
Chief United States District Judge